IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEGAN B.,[1]

                        Plaintiff,

               v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                     Defendant.

Case No. 6:23-cv-00790-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

      Megan B. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act. The Court has jurisdiction over this matter pursuant

to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have consented to the jurisdiction of a

magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court

affirms the Commissioner's decision because it is free of harmful legal error and supported by

substantial evidence.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff was born in February 1985, making her thirty-four years old on January 7, 2020, her amended alleged disability onset date and the day she protectively filed her SSI application.[2]

---

[2] Although a claimant's "complete medical history (*i.e.*, records of a claimant's medical sources covering at least the [twelve] months preceding the month in which an application is filed) must be considered for purposes of his application, . . . SSI benefits are not payable prior to the month following the month in which the application was filed[.]" *Pineda v. Comm'r of Soc. Sec.*, No. 1:22-cv-01287-SAB, 2023 WL 5334984, at *1 n.3 (E.D. Cal. Aug. 18, 2023) (citing 20

(Tr. 10, 24, 42, 87, 97.) Plaintiff has a General Equivalency Diploma and past relevant work experience as a case aide. (*Id.* at 24, 228.) In her application, Plaintiff alleges disability due to arthritis with cystic changes, fibromyalgia, anxiety, depression, mobility issues, seizures, an "abrasion on [her] brain," nerve "complications/damage," and thyroid and heart "complications." (*Id.* at 88, 97.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on July 13, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 10.) On March 8, 2022, Plaintiff and an impartial vocational expert ("VE") appeared and testified at an administrative hearing held before an ALJ. (*Id.* at 37-56.) On April 15, 2022, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 10-26.) On March 27, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed

---

C.F.R. §§ 416.335 and 416.912). Consequently, "the ALJ's disability determination [in an SSI case] is whether [claimant] was under a disability as of the date the application was filed." *Id.*

impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

### III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 10-26.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 7, 2020, her amended disability onset and application date. (*Id.* at 13.) At step two, the ALJ found that Plaintiff suffers from the following severe impairments: (1) a "right ankle condition," (2) psoriatic arthritis, (3) "fibromyalgia [versus] chronic pain," (4) a "lumbar spine condition," (5) a "cervical spine condition," (6) obesity, (7) an anxiety disorder, and (8) an affective disorder. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 14.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff cannot climb ladders, ropes, and scaffolds, (2) Plaintiff can occasionally climb ramps or stairs, balance, stoop, kneel, crouch,

crawl, reach overhead bilaterally, and operate foot controls with the right lower extremity,

(3) Plaintiff "should avoid concentrated exposure to work hazards, such as dangerous moving

machinery and unprotected heights," and (4) Plaintiff "can perform simple routine tasks." (*Id.* at

16.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work

as a case aide. (*Id.* at 24.) At step five, the ALJ found that Plaintiff was not disabled because a

significant number of jobs existed in the national economy that Plaintiff could perform, including

work as a production assembler, "cleaner, housekeeper," and "small products assembler I." (*Id.*

at 25.)

## DISCUSSION

Plaintiff raises one primary issue on appeal: whether substantial evidence supports the

ALJ's discounting of the opinion of Plaintiff's nurse practitioner, Maria Fife ("Fife"). (Pl.'s

Opening Br. at 4-8, ECF No. 8.) As explained below, the Court finds that substantial evidence

supports the ALJ's discounting of Fife's opinion, and therefore affirms the Commissioner's

decision.

## I.     APPLICABLE LAW

### A.     Revised Regulations

"In January 2017, the Social Security Administration issued revised regulations for

evaluating medical opinions relating to claims filed on or after March 27, 2017."[3] *Cross v.*

*O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citing Revisions to Rules Regarding the

Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pts.

404 & 416)). The revised "regulations provide that ALJs will no longer 'defer or give any

---

[3] The parties agree the revised regulations apply because Plaintiff filed her application after March 27, 2017. (*See* Pl.'s Opening Br. at 4; Def.'s Br. at 4, ECF No. 10; Pl.'s Reply Br. at 1, ECF No. 11.)

specific evidentiary weight' to any medical opinion."[4] *Id.* (quoting 20 C.F.R. § 416.920c(a)).

Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering

specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (citing *Woods v.

Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) and 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-

(b))).

      Specifically, the revised "regulations require an ALJ to discuss the supportability and

consistency of medical evidence—the factors the agency has historically found to be the most

important in evaluating medical opinions—while allowing for discussion of other factors listed

in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R.

§ 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency

considers when evaluating the persuasiveness of medical opinions are 'supportability' and

'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a

medical source supports a medical opinion by explaining the relevant objective medical

evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v.

Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source

supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)).

"Consistency means the extent to which a medical opinion is consistent with the evidence from

---

[4] In *Cross*, the Ninth Circuit held that the revised regulations are valid under both the Social Security Act and Administrative Procedures Act. 89 F.4th at 1216-17. Recently, "[t]he Supreme Court . . . overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which 'required courts to defer to permissible agency interpretations of the statutes those agencies administer—even when a reviewing court reads the statute differently.'" *Williams v. O'Malley*, No. 23-35358, 2024 WL 3519774, at *1 n.1 (9th Cir. July 24, 2024) (quoting *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2254 (2024)). In *Cross*, the Ninth Circuit "held that the [Social Security] Act 'plainly encompasse[d] the Commissioner's authority to adopt regulations to govern the weighing of medical evidence,' without deferring to the agency's interpretation of the statute." *Id.* (quoting *Cross*, 89 F.4th at 1215). Consequently, the Ninth Circuit has stated that the Supreme Court's decision in "*Loper* does not undercut *Cross*." *Id.*

other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

### B.      Substantial Evidence Review

The Ninth Circuit held that its "prior standard, that an ALJ 'provide specific and legitimate reasons for rejecting a treating or examining doctor's opinion,' is 'incompatible with the revised regulations' addressing the weighing of medical opinions without 'special deference to the opinions of treating and examining physicians.'" *Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32 F.4th at 792). The Ninth Circuit, however, also recognized that "[e]ven under the [revised] regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792,

Thus, for claims subject to the revised regulations, a district court reviews for substantial evidence an ALJ's explanation for discounting any medical opinion. *See Kitchen*, 82 F.4th at 740 (stating that "[u]nder the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence'" (quoting *Woods*, 32 F.4th at 792)); *Woods*, 32 F.4th at 787 ("For claims subject to the [revised] regulations, the former hierarchy of medical opinions . . . no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion,

must simply be supported by substantial evidence."); *see also Stiffler*, 102 F.4th at 1108 ("In sum, the ALJ's evaluation of [the physician's] medical opinion is supported by substantial evidence.").

## II.    ANALYSIS

Plaintiff argues that the ALJ improperly rejected Fife's opinion. (Pl.'s Opening Br. at 6-8.) The Court disagrees and finds that substantial evidence supports the ALJ's discounting of Fife's opinion.

### A.    Fife's Opinion

On March 4, 2022, Fife filled out a questionnaire she received from Plaintiff's counsel regarding Plaintiff's treatment history, diagnoses, and work-related functional limitations. (Tr. 1391-93.) Fife reported that she had served as Plaintiff's primary care provider during the preceding four years, and that Plaintiff's "primary symptoms" are "joint pains, anxiety, depression, [and] rashes." (*Id.* at 1391; *but cf. id.* at 764-69, reflecting that in a treatment note dated November 12, 2019, Fife reported that Plaintiff was "a new patient to [the] clinic" who presented for purposes of "establish[ing] care"). With respect to functional limitations, Fife opined that Plaintiff is capable of lifting and carrying ten pounds on a frequent or occasional basis, standing and/or walking for thirty minutes at a time, standing and/or walking for less than two hours during an eight-hour workday, sitting for eight hours at a time, and sitting for more than six hours during an eight-hour workday. (*Id.* at 1392.) Fife also opined that Plaintiff can never crouch or crawl but can occasionally climb, balance, stoop/bend, kneel, reach, and handle. (*Id.*)

With respect to the identified upper extremity limitations, Fife explained that Plaintiff has "active arthritis in [her] elbows [and] hands that had not responded significantly to medication prescribed by rheumatology." (*Id.* at 1393.) Fife added that Plaintiff experiences medication side

effects (fatigue and nausea), she estimated that for twenty percent of a "standard workweek," Plaintiff's "attention and concentration would be impaired to such a degree that [Plaintiff] could not be expected to perform even simple work tasks," and she would expect Plaintiff to "miss [sixteen] hours (the equivalent of two full workdays) or more per month from even a simple, routine job because of [Plaintiff's] impairments, symptoms, or medications and their side effects[.]" (*Id.*) In support of her opinion on absenteeism, Fife explained that although she believed "work would be good for [Plaintiff's] mental health[, she did not] think [Plaintiff's] anxiety will let her consider it[, or that] an employer could rely on [Plaintiff] to show up [and] engage[.]" (*Id.*)

### B.     The ALJ's Decision

The ALJ found that Fife's opinions were "not persuasive." (*Id.* at 23.) In support of this finding, the ALJ explained that Fife's opinions are "not supported by the medical evidence of record[,] including her own treatment record narratives[] [which] do not reveal the significant problems she [identified.]" (*Id.*) By way of example, the ALJ observed that "there is no evidence of any significant issues with [Plaintiff's] hands during the relevant period." (*Id.*) The ALJ also observed that "there is no evidence [that Plaintiff has] report[ed] any significant side effects from her medications that would limit her." (*Id.*) Finally, the ALJ explained that Fife's opinions are "not consistent" with the opinions of Plaintiff's treating rheumatologist, Amitha Gona, M.D. ("Dr. Gona"), "who specifically indicated [that Plaintiff's] arthritis was not incapacitating." (*Id.*; *see also* Tr. 1401-04, attaching a copy of the questionnaire Dr. Gona completed on March 11, 2022).

### C.     Disposition

Plaintiff argues that the ALJ's reasons for discounting Fife's opinion are flawed, and therefore substantial evidence does not support the ALJ's decision. (Pl.'s Opening Br. at 6-8.)

The Court disagrees. *See generally Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("[T]he threshold for [substantial] evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019))).

### 1.    Consistency

The Court finds that the ALJ adequately considered and addressed the consistency of Fife's opinion.

Under the revised regulations, "ALJ[s] 'must articulate how persuasive it finds all of the medical opinions from each doctor or other source, and explain how [the] considered the supportability and consistency factors in reaching these findings.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792). "[C]onsistency concerns [the extent to which] 'a medical opinion is consistent with the evidence from other medical and nonmedical sources.'" *Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32 F.4th at 792). Thus, an ALJ may discount a medical opinion on the ground that it is inconsistent with other medical evidence. *See Woods*, 32 F.4th at 788, 792-93 (addressing whether the ALJ erred in finding that an examining psychologist's "opinion conflicted with evidence from other medical sources," holding that "[s]ubstantial evidence support[ed] the ALJ's inconsistency finding," and explaining that the ALJ appropriately discounted psychologist's opinion as "inconsistent with the overall treating notes and mental status exams in the record," including a physician's and nurse practitioner's conflicting observations).

The ALJ explained that he found unpersuasive Fife's opinion, in part because it was "not consistent" with the opinions of Plaintiff's rheumatologist, Dr. Gona, "who specifically indicated [that Plaintiff's] arthritis was not incapacitating." (Tr. 23; *cf.* Tr. 1401-04, reflecting that on

March 11, 2022, Dr. Gona completed a questionnaire, opined that Plaintiff does not have

"exacerbations which are incapacitating" because of her "arthritis condition" but twice "per year

(on average)," Plaintiff does have "exacerbations which are not incapacitating," and explained

that she was "unable to complete" the RFC assessment, absenteeism, and time off-task portions

of the questionnaire). Plaintiff argues that contrary to the ALJ's finding, Dr. Gona's opinion on

the absence of incapacitating arthritis exacerbations is "not inconsistent" with "the findings

of . . . Fife, who . . . also determined that Plaintiff's impairments included psoriatic arthritis."

(Pl.'s Opening Br. at 7.)

     The Court finds that substantial evidence supports the ALJ's discounting of Fife's

opinion on the ground it was inconsistent with Dr. Gona's opinion. *See Stephens v. Kijakazi*, No.

22-35998, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023) (holding that "[s]ubstantial evidence

support[ed] the ALJ's discounting of [the claimant's] medical evidence," and noting that "[t]he

standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear

enough that it has the power to convince." (quoting *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th

Cir. 2022))).

     Plaintiff suggests that Dr. Gona's and Fife's opinions are consistent because both

providers found that "Plaintiff's impairments included psoriatic arthritis." (Pl.'s Opening Br. at

7.) Plaintiff adds that the Ninth Circuit has "repeatedly held" that a claimant does not need to be

"utterly incapacitated" to be disabled within the meaning of the Social Security Act, and that the

ALJ and Commissioner incorrectly interpret Dr. Gona's opinion on arthritis exacerbations as

"mean[ing] that Dr. Gona indicated a lack of impairment" or "no impairment at all." (Pl.'s Reply

at 5.)

///

Contrary to Plaintiff's arguments, the ALJ did not interpret Dr. Gona's opinion regarding Plaintiff's arthritis exacerbations as meaning "a lack of impairment" or "no impairment at all." Furthermore, and as demonstrated below, the ALJ's decision and the longitudinal record support the ALJ's finding of a meaningful inconsistency between Dr. Gona's and Fife's opinions.

With respect to the former issue, the ALJ explained why he found persuasive Dr. Gona's opinion in the paragraph immediately after the paragraph at issue in this case. (*See* Tr. 23, setting forth the ALJ's unchallenged evaluation of Dr. Gona's opinion). As relevant here, the ALJ initially observed that Dr. Gona "reported [that Plaintiff] had exacerbations of her arthritis condition that were not incapacitating about twice a year during which [Plaintiff] complains of pain in her hands and feet," and Dr. Gona "opined [that Plaintiff] did not have any exacerbations of her arthritis conditions that were incapacitating." (Tr. 23, citing "Exhibit B27F," i.e., Tr. 1401-44.) Importantly, however, the ALJ then explained that Dr. Gona's "finding that [Plaintiff's] arthritis is not incapacitating suggests [that Plaintiff] would be capable of work," and Dr. Gona's opinions are "consistent with [Dr. Gona's] treatment records that show . . . [Dr. Gona] reporting [Plaintiff's] arthritis as moderately well controlled." (*Id.*) These findings are significant for several reasons.

First, and as a threshold matter, the ALJ's findings are significant because "a fair consideration" of the ALJ's decision requires the Court to evaluate the ALJ's "full explanation, not just an isolated part." *See Waldram v. Kijakazi*, No. 22-35893, 2023 WL 8433769, at *2 (9th Cir. Dec. 5, 2023) (applying the revised regulations, explaining that "a fair consideration of the ALJ's decision show[ed] that the ALJ considered and discredited [a psychologist's] opinions regarding [the claimant's] moderate and marked limitations, and adequately explained the decision to do so," and "noting that a reviewing court must consider an ALJ's full explanation,

not just an isolated part . . . [and] even if a decision is explained 'with less than ideal clarity,' any error is harmless if the [ALJ's] path 'may be reasonably discerned'" (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) and quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014))). Notably, ALJs are not required to articulate their "full explanation" in "one place" or paragraph in their decisions, and a court errs by "overlooking [an] ALJ's full explanation." *Wendt v. Kijakazi*, No. 23-35069, 2023 WL 8542737, at *2 (9th Cir. Dec. 11, 2023) ("[The plaintiff] argues that the ALJ was obliged to provide specific, clear, and convincing reasons for discrediting his symptom testimony. . . . But that is what the ALJ did; although the reasons were not all articulated in one place in the ALJ's opinion, we '[l]ook[] to *all* the pages of the ALJ's decision.' Upon review of the ALJ's whole decision and the entire record, we conclude substantial evidence supports the ALJ's RFC determination." (simplified) (quoting *Kaufmann*, 32 F.4th at 851)); *see also Kaufmann*, 32 F.4th at 851 ("Looking to *all* the pages of the ALJ's decision, the [district] court held that, contrary to its original ruling, the ALJ had, in fact, explained which [of the claimant's] daily activities conflicted with which parts of [the] [c]laimant's [symptom] testimony. . . . We agree with the Commissioner and the [district] court that, in its original decision, the [district] court clearly erred by overlooking the ALJ's full explanation.").

Second, the ALJ's findings are significant because the longitudinal record supports the ALJ's observation that Dr. Gona reported that Plaintiff's arthritis was "moderately well controlled":

- March 10, 2020: Plaintiff visited Dr. Gona for an "evaluation of [her] psoriatic arthritis." (Tr. 1136.) Dr. Gona noted that Fife referred Plaintiff for the rheumatological evaluation, and that Plaintiff reported that she suffered from

neck, lower back, left hip, right knee, and right ankle pain, her previous
"Remicade infusion[s] . . . work[ed] well for [her psoriatic arthritis],"
Remicade is the "only [medication that] has worked for her," and her "pain is
worse with activity." (*Id.* at 1136-39.) With the exception of "[b]ilateral
elbow . . . tenderness," Dr. Gona's examination of Plaintiff's musculoskeletal
system (shoulders, elbows, wrists, hands, knees, ankles, and forefeet) did not
reveal any notable tenderness, swelling, deformities, periungual erythema, or
limits on Plaintiff's range of motion. (*Id.* at 1139.) Dr. Gona explained that
Plaintiff "probably . . . ha[d] [a] mild amount of remission after being [off]
Remicade," she planned to check Plaintiff's "inflammation markers," and
there may be "an element of fibromyalgia [but Plaintiff] declined having that
condition." (*Id.* at 1140.)

- April 13, 2020: During a "telemedicine call," Plaintiff informed Dr. Gona that
  she recently had a "severe flare of her psoriasis in her groin and other areas"
  but "overall she ha[d] been doing well." (*Id.* at 1332.) Dr. Gona noted that
  Plaintiff complained of "some neck pain" and "denie[d] any other severe joint
  pains," joint stiffness, swelling, or "allergic reaction to [her] medication." (*Id.*
  at 1132.)

- August 27, 2020: Dr. Gona observed that Plaintiff complained of "ankle pain
  and hip pain" and "easy instability of the ankle," and Plaintiff's "psoriasis and
  psoriatic arthritis [were] moderately well controlled." (*Id.* at 1123, 1126.)

///

///

- December 3, 2020: Dr. Gona reported that Plaintiff's "psoriasis and psoriatic arthritis [were] moderately well controlled," and Plaintiff exhibited "very mild psoriasis." (*Id.* at 1244-45.)

- March 4, 2021: Plaintiff visited Dr. Gona complaining of "worsening lower back pain" and "severe neck pain and shoulder pain." (*Id.* at 1115.) Plaintiff reported that her back pain was "worse with any activities," "rest and [a] hot bath helps the back pain," "[e]todolac . . . helps with the pain control," she was "better with Remicade infusions," she was participating in physical therapy, and she experiences "stiffness in [the morning] usually in [her] lower back and neck pain[, which] lasts for [a] few hours and once she takes medications it helps the pain." (*Id.* at 1115.) Based on her examination and discussion with Plaintiff, Dr. Gona determined that Plaintiff exhibited "very mild psoriasis" and Plaintiff's "psoriasis and psoriatic arthritis [were] moderately well-controlled." (*Id.* at 1118.) Dr. Gona also noted that she would add leflunomide to Plaintiff's regimen to address her reports of pain. (*Id.*)

- May 6, 2021: Dr. Gona noted that Plaintiff had a "rash on [her] elbows" and "around the finger ring she wears" but her psoriasis was "overall [and] otherwise . . . better controlled," Plaintiff reported that physical therapy for her "neck . . . helped her pain in [the] fingers," and Plaintiff planned to attend physical therapy for her "low back pain." (*Id.* at 1234.) Dr. Gona also observed that Plaintiff's "psoriasis and psoriatic arthritis [were] moderately well controlled," Plaintiff exhibited "very mild psoriasis," Plaintiff believed that she developed "chest pain" as a "side effect with leflunomide," and she

asked Plaintiff to "try it again" because chest pain is "not [a] known side effect." (*Id.* at 1237.)

- July 22, 2021: Fife observed that Plaintiff was "taking buprenorphine daily and tolerating it well," Plaintiff "[a]gree[d] that [buprenorphine] help[ed] to also reduce her chronic pain," and Plaintiff "denie[d] any concerns with the medication." (*Id.* at 1304, 1309.) Fife added that Plaintiff complained of neck pain but was "attend[ing] physical therapy for this complaint," and although Dr. Gona "encouraged [Plaintiff] to try [leflunomide] again," Plaintiff did "not seem convinced to restart the leflunomide" because she was "concern[ed] that it might impact her liver." (*Id.* at 1309.) Fife "encourage[d] [Plaintiff] to reconsider the leflunomide as [it is] generally an effective approach for many patients with psoriatic and rheumatoid arthritis," and advised that it was "doubtful that the side effects [Plaintiff] experienced," such as "chest pain [that] was musculoskeletal in nature," were "related to the medication." (*Id.* at 1309-10.)

- November 4, 2021: Plaintiff followed up with Dr. Gona regarding her psoriasis and psoriatic arthritis. (*Id.* at 1225-27.) Based on her examination and discussion with Plaintiff, Dr. Gona determined that Plaintiff's "psoriasis and psoriatic arthritis [were] moderately well controlled," noting that "very mild psoriasis [was] seen," and in terms of lower back pain, she "[r]equested [that Plaintiff] continue doing [her] core strengthening exercises at home." (*Id.* at 1228.)

*///*

- November 22, 2021: Fife observed that Plaintiff continued to "tak[e]
  buprenorphine/naloxone . . . and [was] tolerating it well," Plaintiff "denie[d]
  any concerns with this medication," and Plaintiff "appreciate[d] what it
  provides her as far as reducing cravings and pain management." (*Id.* at 1268,
  1273.) Fife added that Plaintiff "continue[d] to see rheumatology [i.e.,
  Dr. Gona] for her psoriatic and rheumatoid arthritis," but unlike Dr. Gona's
  report from less than three weeks earlier, Fife stated that Plaintiff's psoriatic
  and rheumatoid arthritis were "currently not well controlled," and Dr. Gona
  and Plaintiff were "working hard to find a treatment plan that [worked] well."
  (*Id.* at 1273.)

Third, the ALJ's findings are significant because they not only address potential lacunae in the questionnaire that Dr. Gona received from Plaintiff's counsel, but they also resolve any ambiguities or dispute about the ALJ's interpretation of Dr. Gona's opinions that Plaintiff does not experience any "incapacitating" arthritis exacerbations and experiences only two "non-incapacitating" arthritis exacerbations per year.[5] The ALJ interpreted Dr. Gona's opinions as meaning that Plaintiff's arthritis would not prevent her from working because Dr. Gona opined that Plaintiff does not experience any "incapacitating" arthritis exacerbations (and experiences only two "non-incapacitating" arthritis exacerbations per year) and often described Plaintiff's psoriatic and rheumatoid arthritis as "moderately well controlled"—all of which suggested to the

---

[5] The questionnaire that Dr. Gona received does not define "incapacitating" or "non-incapacitating" arthritis exacerbations, but if such exacerbations occur, the questionnaire does provide (1) a space for comments on non-incapacitating exacerbations, which asks the provider to "describe the . . . duration of the exacerbation," and (2) five check-box options (i.e., a minimum option of less than a week and maximum option of six weeks or more) regarding the "total duration" of "incapacitating exacerbations . . . over the past [twelve] months." (*See* Tr. 1401-04.)

ALJ that Plaintiff's arthritis is not disabling. (*Compare* Tr. 1393, showing that Fife stated that she "[w]ould . . . expect [Plaintiff] to miss [sixteen] hours (the equivalent of two full workdays) or more per month from even a simple, routine job because of her impairments, symptoms, or medications and their side effects," *with id.* at 53, reflecting that the ALJ asked the VE about whether "a person [was] . . . absent two or more days per month," and the VE testified that this rate of absenteeism would "place[] [the person] in a position of being at high risk of termination before long").

Fourth and finally, the ALJ's findings are significant because circuit case law demonstrates that impairments that can be controlled effectively with treatment are not disabling, and thus the ALJ appropriately discounted Fife's opinion—which, unlike Dr. Gona's opinion, supports a finding of disability (*compare id.* at 1393, *with id.* at 53)—as inconsistent with Dr. Gona's opinion. *See Kitchen*, 82 F.4th at 739 ("Impairments that can be controlled effectively with [treatment] are not disabling for the purposes of determining eligibility for SSI benefits." (quoting *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006))); *see also Bell v. Kijakazi*, No. 21-35732, 2022 WL 9731077, at *1 (9th Cir. Oct. 17, 2022) ("The ALJ found [the psychiatrist's] opinion unpersuasive because it was inconsistent with [the claimant's] longitudinal record—including other, undisputed medical evaluations[.] . . . [The claimant] has not shown that the ALJ erred because an ALJ can reject an opinion presenting inconsistencies between the opinion and the medical record." (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008))).

The Ninth Circuit addressed a comparable situation in *Levering v. O'Malley*, No. 23-35110, 2024 WL 1574344, at *1 (9th Cir. Apr. 11, 2024). In that case, the claimant alleged "disability due to fibromyalgia, osteopenia, arthritis in her hip and lower back, and depression,"

and argued that the ALJ erred in rejecting her physician assistant's medical opinion. *Id.* The

Ninth Circuit observed at the outset that the ALJ "considered the requisite factors" under the

revised regulations and "applied the correct legal standard," and that "[w]hen rejecting a medical

source's opinion, [an] ALJ must provide 'an explanation supported by substantial evidence.'" *Id.*

(quoting *Woods*, 32 F.4th at 791-92). The Ninth Circuit then held that the ALJ did not err in

discounting the physician assistant's opinions. *Id.* The Ninth Circuit explained, among other

things, that "substantial evidence support[ed] the ALJ's determination that the [the physician

assistant's] opinions were inconsistent with other evidence in the record, which suggested [the

claimant's] pain was *fairly* well controlled." *Id.* (emphasis added) (citing, *inter alia*, *Tommasetti*,

533 F.3d at 1041).

Similarly, in *Hernandez v. Saul*, No. 1:20-cv-00041, 2021 WL 1212651, at *7 (E.D. Cal.

Mar. 31, 2021), the district court held that the "ALJ did not err in evaluating the opinion of [an

examining physician] and assigning it discounted weight." *Id.* The district court explained that

"[a]n ALJ may reject the opinion of [a claimant's] physician where the limitations imposed are

inconsistent with objective evidence in the record," and the ALJ identified such evidence by

citing the claimant's recent "pain management notes," which stated, among other things, that his

"pain was *moderately* well controlled[.]" *Id.* at *6 (emphasis added) (citing *Tommasetti*, 533

F.3d at 1041).

Consistent with *Levering* and *Hernandez,* the district court in *Diller v. Commissioner of

Social Security Administration*, No. 6:14-cv-1414-MA, 2015 WL 5308233, at *8-9 (D. Or. Sept.

10, 2015), held that the ALJ did not err in discounting a treating physician's opinion and noted

that the ALJ appropriately relied on the "findings and opinion of [an] examining physician," who

"opined that [the claimant's] symptoms appear[ed] moderately well controlled with medication." *Id.*

Like the ALJs in *Levering*, *Hernandez*, and *Diller*, the ALJ here discounted Fife's opinion on the ground that it is "not consistent with [Plaintiff's] treating rheumatologist Dr. Gona's opinion, who specifically indicated [that Plaintiff's] arthritis was not incapacitating," and also "report[ed] [that Plaintiff's] arthritis [w]as moderately well controlled." (Tr. 23.) The ALJ did not err in doing so. (*Compare id.* at 1228, November 4, 2021, Dr. Gona stated that Plaintiff's "psoriasis and psoriatic arthritis [were] moderately well controlled," *with id.* at 1273, November 22, 2021, Fife stated that Plaintiff's psoriatic and rheumatoid arthritis were "currently not well controlled"; *see also id.* at 1393, showing that Fife stated that she "[w]ould . . . expect [Plaintiff] to miss [sixteen] hours (the equivalent of two full workdays) or more per month from even a simple, routine job because of her impairments, symptoms, or medications and their side effects"; *cf. id.* at 53, reflecting that the VE testified that if "a person [was] . . . absent two or more days per month," it would "place[] [the person] in a position of being at high risk of termination before long").

In sum, the ALJ did not err in discounting Fife's opinion as inconsistent with Dr. Gona's opinion.

### 2.    Supportability

The Court finds that the ALJ also properly considered and addressed the supportability of Fife's opinion. (*See* Pl.'s Reply Br. at 6, suggesting that Plaintiff disputes only whether substantial evidence supports the ALJ's explanation, not whether the ALJ considered both consistency and supportability).

"Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*,

32 F.4th at 791-92); *see also Kitchen*, 82 F.4th at 740 ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence." (quoting *Woods*, 32 F.4th at 791-92)). In *Stiffler*, for example, the Ninth Circuit observed that the ALJ discounted a physician's opinion in part because he "did not reference any specific objective findings to support the extreme mental functioning limitations he assessed," and "included only conclusions regarding functional limitations without any rationale for those conclusions." 102 F.4th at 1106-07. The Ninth Circuit noted that an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.* at 1107 (quoting *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)). The Ninth Circuit then held that "[s]ubstantial evidence thus support[ed] the ALJ's conclusion that [the physician] failed to support his opinion 'by explaining the relevant objective medical evidence.'" *Id.* (quoting *Woods*, 32 F.4th at 792-92); *see also Kitchen*, 82 F.4th at 740 n.4 (noting that the claimant's argument that "the ALJ failed to assess the consistency and supportability of [two] medical opinions" was "belied by the record," as the "ALJ explicitly discussed the supportability and consistency of the opinions . . . by identifying medical sources and records relevant to her analysis").

The Ninth Circuit also applied the revised regulations in *Levering* and held that the ALJ "considered the requisite factors and applied the correct legal standard in evaluating the medical opinion evidence[.]" 2024 WL 1574344, at *1. The Ninth Circuit explained, among other things, that "the ALJ did not err in discounting [the provider's] opinions as not justified by any reason or identified evidence," because the provider's "opinions include[d] little supporting explanation[.]" *Id.*

///

Similarly, in *Waldram*, the Ninth Circuit held that the "ALJ properly considered and addressed the supportability and consistency of [an examining psychologist's] opinion[.]" 2023 WL 8433769, at *1-2. The Ninth Circuit explained that in "[c]onsidering the supportability of [the psychologist's] opinion, the ALJ found that although [the psychologist's] proposed limitations were 'supported by the psychologist's exam,' the[] limitations were 'wholly inconsistent with how [the claimant] actually performed.'" *Id.* at *1. After citing examples, including *Woods* on the meaning of supportability, the Ninth Circuit stated that "substantial evidence support[ed] the ALJ's determination that the relevant objective medical evidence from [the psychologist's] examination did not support his proposed mental limitations." *Id.* (citing *Woods*, 32 F.4th at 791-92); *see also Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *1 (9th Cir. June 21, 2023) (stating that "[a]n ALJ is not required to incant the 'magic words' of 'supportability' and 'consistency' in his findings" (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989))).

The ALJ here properly considered and addressed the supportability of Fife's opinion. The ALJ observed that Fife identified fatigue and nausea as side effects of Plaintiff's medications and opined that Plaintiff suffers from upper extremity limitations that impair her ability to push and/or pull and prevent her from engaging in more than occasional (i.e., one-third of an eight-hour workday) reaching and handling. (Tr. 23, citing "Exhibit B26F," i.e., Tr. 1391-1400.) The ALJ also observed that Fife attempted to support her opinion on upper extremity limitations by "indicat[ing] [that Plaintiff] ha[s] active arthritis in her elbows and hands that ha[ve] not responded sufficiently to medications." (*Id.* at 23; *cf. id.* at 1392-93, detailing Fife's upper extremity opinions and "explain[ation]" that Plaintiff "has active arthritis in [her] elbows [and]

hands that has not responded sufficiently to medications prescribed by rheumatology," i.e.,

Dr. Gona).

After doing so, the ALJ explained that he found unpersuasive Fife's opinions because

"[t]hey are not supported by the medical record[,] including [Fife's] own treatment record

narratives [which] do not reveal the significant problems [that Fife identified in her opinion.]"

(*Id.* at 23.) By way of example, the ALJ noted that "there is no evidence of [Plaintiff] reporting

any significant side effects from her medications that would limit her" ability to work, and that

"there is no evidence of any significant issues with [Plaintiff's] hands during the relevant

period." (*Id.*)

Plaintiff argues that it is "clearly not the case" that the record fails to reveal "any

significant issues with [her] hands during the relevant period, . . . as [her] psoriatic arthritis

caused [her] pain on numerous occasions." (Pl.'s Opening Br. at 6, citing Tr. 374, 882, 1119,

1198.) Plaintiff further argues that the ALJ was "incorrect" in finding that Fife's own treatment

records do not support her opinion, "as . . . Fife determined that there were issues sufficient to

send Plaintiff to rheumatology, as well as offering additional medication to resolve Plaintiff's

pain" while she waited for upcoming appointment with Dr. Gona. (*Id.* at 6-7, citing Tr. 739.) In

her reply, Plaintiff also emphasizes, among other things, that in October and December 2020 and

March 2021, respectively, she complained of cervical spine-related hand pain, failed "empty

can" and "drop arm" tests during physical therapy, and reported that her left hand "significantly

improved" but the right continued to be problematic. (Pl.'s Reply Br. at 2, citing Tr. 882, 1119-

20, 1198.)

Plaintiff's arguments fail to demonstrate harmful error because they amount to

advocating for alternatives to the ALJ's rational interpretation of the record. *See Crawford v.*

*Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore [did] not demonstrate error"); *see also Ford*, 950 F.3d at 1154 ("If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005))). In the Court's view, Plaintiff fails adequately to address notable evidence supporting the ALJ's rational interpretation.

To illustrate, Plaintiff cites her December 2020 physical therapy record describing a "[p]ositive empty[] [and] negative full can [test] on [her left] shoulder" and "positive drop arm" test. (Tr. 1198; Pl.'s Reply Br. at 2.) Plaintiff, however, fails to address her May 2021 physical therapy note stating that she had "achieved all short and long term functional goals for her neck and referral patterns down to her hands," which included, but were not limited to, "return[ing] to full night sleep, perform[ing] all [activities of daily living] in/out of [the] house, . . . return[ing[ to recreational activities," exhibiting "no peripheralizing [symptoms] into [the upper extremities or] reactive pain to cervical spine with [upper extremity] reaching," and performing a "negative empty can." (Tr. 1203); *cf. Stockdale v. Kijakazi*, No. 22-16626, 2023 WL 7675562, at *1 (9th Cir. Nov. 15, 2023) (determining that the "ALJ permissibly weighed the medical opinions in the record," and explaining that on appeal, the claimant cited "portions of the record showing that she struggled with certain tasks" but other records suggested otherwise (citing *Ford*, 950 F.3d at 1155)).

///

///

///

Plaintiff also fails adequately to address that Fife's supporting explanation was based on Dr. Gona's treatment of Plaintiff's arthritis.[6] (*See* Tr. 1392-93, detailing Fife's upper extremity opinions and "explan[ation]" in support that Plaintiff "has active arthritis in [her] elbows [and] hands that has not responded sufficiently to medications prescribed by rheumatology," i.e., Dr. Gona). As reflected on the same page of his decision, the ALJ found that Fife's opinion was "not supported by the medical evidence of record," including, but not expressly limited to, Fife's "own treatment narratives[.]" (*Id.* at 23.) In support, the ALJ noted that the medical evidence did not reveal "evidence of any significant issues with [Plaintiff's] hands during the relevant period," and Fife's opinion conflicted with Dr. Gona's opinion, particularly on the severity of Plaintiff's arthritis. (*Id.*)

It was reasonable for the ALJ to find inadequately supported Fife's opinions and explanations. After all, the record reflects that Fife premised her upper extremity limitations opinions and supporting explanation on Dr. Gona's treatment of Plaintiff's arthritis. (*See id.* at 1392-93, explaining that Plaintiff "has active arthritis in [her] elbows [and] hands that has not responded sufficiently to medications prescribed by rheumatology," i.e., Dr. Gona). Contrary to Fife's statement about Dr. Gona's treatment, Dr. Gona reported that Plaintiff's arthritis is not incapacitating and is moderately well controlled, which the ALJ appropriately construed to mean not disabling.

Proceeding on the assumption that the ALJ's "reasoning for rejecting [only] portions of . . . Fife's opinions [was] sufficient," Plaintiff argues that there is still a "problem here" because the "ALJ seemingly only offered reasons for rejecting Plaintiff's hand and wrist limits,

---

[6] The Court notes that Plaintiff does not challenge the ALJ's evaluation of other relevant and conflicting medical and nonmedical evidence, including the ALJ's decision to discount Plaintiff's testimony based, in part, on her activities and response to certain treatments. (*See* Tr. 17-22.)

which would have absolutely no impact on Plaintiff's walking ability" or "ability to remain on task or attend[] [work]." (Pl.'s Opening Br. at 7; *see also* Pl.'s Reply Br. at 8 & n.5, expanding on this issue).

Plaintiff's argument fails to demonstrate harmful error for two primary reasons. First, Plaintiff does not address whether the ALJ provided any reasons for discounting that would apply to Fife's entire opinion.

Second, and to the extent Plaintiff suggests otherwise, the ALJ did not divide his evaluation of Fife's opinion into distinct parts; rather, he cited general justifications for finding unpersuasive Fife's opinion, and simply highlighted examples supporting why he did so (and consistent with his previous findings and evaluations, many of which are unchallenged). (*See* Tr. 23.) These observations are significant and undermine Plaintiff's claim of harmful error. *See generally Tanya Rae J. v. O'Malley*, No. 6:23-cv-1000-SI, 2024 WL 4275700, at *6 (D. Or. Sept. 23, 2024) ("When an ALJ divides the analysis of testimony into distinct parts, the ALJ's reasoning that is distinct to one part . . . can only be considered for that aspect of the opinion. Reasons given by the ALJ to discount testimony in a section that 'apply to a witness' entire testimony,' however, may be relevant to the 'whole opinion.'" (quoting *Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016))); *Jeffrey T. v. Comm'r of Soc. Sec.*, No. 18-cv-00657, 2019 WL 1316762, at *3 (W.D. Wash. Mar. 22, 2019) ("If the ALJ correctly found that [the physician] was careless in completing his form opinion, then that carelessness infect[ed] the entire opinion[.]"); *Jason F v. Comm'r of Soc. Sec.*, No. 2:17-cv-00228, 2018 WL 3015250, at *5 (E.D. Wash. June 15, 2018) ("Plaintiff concedes that the right sided limitations are unsupported, but argues that this only affects the reliability of [the physician's] opinion as to the limitations on [the] [p]laintiff's right side. . . . The Court disagrees. The fact that a source would opine

limitations that are unsupported by the record and his own treatment notes calls the reliability of the entire opinion into question.").

Plaintiff suggests that this case is comparable to the Ninth Circuit's decision in *Dale*. (*See* Pl.'s Reply Br. at 8 & n.5.) The ALJ's evaluation of Fife's opinion, however, is distinguishable from the *Dale* ALJ's analyis and oversight. *See* 823 F.3d at 945 ("The ALJ himself divided [the source's] testimony into two parts: (1) 'exertional and postural' limitations and (2) 'manipulative and mental' limitations. . . . As to the former, the ALJ permissibly discounted [the source's] testimony on the ground that her treatment notes did not objectively support the degree of limitation proposed. As to the latter, the ALJ stated his intention to devise an RFC finding that was 'generally consistent with [the source's] assessment'—that is, to credit, or at least not contradict, [the source's] opinion of [the] [c]laimant's 'manipulative and mental' limitations. But in fact the RFC differs markedly from [the source's] view."). Thus, *Dale* does not apply here. *Cf. id.* ("We now hold that an ALJ errs when he discounts a[] . . . source's entire testimony because of inconsistency with evidence in the record, *when* the ALJ has *divided* the testimony into *distinct* parts *and* determined that *only one part* of the testimony is inconsistent.") (emphasis added).

### 3.    Conclusion

In sum, the Court finds that substantial evidence supports the ALJ's discounting of Fife's opinion.

///

///

///

///

///

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is

free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 4th day of October, 2024.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge